## 10101

### STRICKLAND v. SOUTHERN RY. CO.

#### (97 S. E. 695.)

1. TRIAL—INSTRUCTIONS—CONSTRUCTIONS AS A WHOLE.—In action under Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for death of locomotive engineer, parts of charge objected to *held* not prejudicial to defendant when charge was considered in its entirety.

2. APPEAL AND ERROR — EXCEPTIONS — SUFFICIENCY.—Exception that it was error to charge plaintiff's requests as submitted, because "they were so prolix, abstract, involved, and academic as to bewilder and confuse the jury," is too general for consideration.

3. APPEAL AND ERROR — EXCEPTIONS — SUFFICIENCY.—Exception that charge "taken as a whole was lengthy, involved, abstract, and ambiguous, its inevitable effect being to bewilder and confuse the jury," is too general for consideration.

Before BOWMAN, J., Lexington, Spring term, 1918. Affirmed.

Action by Mrs. Mary E. Strickland, administratrix of the estate of H. B. Strickland, deceased, against the Southern Railway Company. Judgment for plaintiff, and defendant appeals.

See, also, 107 S. C. 521, 93 S. E. 187.

Statement: This is an action for damages for the death of H. B. Strickland and for suffering that preceded his death. It is admitted that he was, at the times of the alleged injury, a locomotive engineer in the service of the defendant, on a run between Savannah and Jacksonville. It is alleged that, at Jacksonville, July 4, 1914, Strickland ran a piece of wire up into the drain cock of the air reservoir, which had become clogged, and that water, iron rust,

and sediment came out with great violence, striking and injuring the back of his hand to such an extent that blood poisoning and acute nephritis resulted, causing his death September 4, 1914. There are a number of specifications of negligence; but the gist of them is covered by the allegations: (a) That the defendant failed to furnish safe appliances; and (b) that it negligently failed to inspect the drain cock and air reservoir and keep them in proper condition. The answer denies liability, alleges that Strickland's own negligence was the proximate cause of his injury, and pleads contributory negligence and assumption of risk.

The case was first tried before Hon. Joseph A. McCullough, special Judge, who granted a motion for a directed verdict December 1, 1916, on the grounds: (1) That there was no testimony tending to show that the appliances furnished were not safe; (2) that the testimony shows that the appliances were inspected at Savannah and before the trip on which the injury is alleged to have occurred; (3) that the injury was due solely to the negligence of the engineer and the manner in which he undertook to unclog the valve; (4) that the injury resulted from a risk that the engineer had assumed. On appeal the judgment was reversed.   107 S. C. 521, 93 S. E. 187.

At the second trial, November 14-20, 1917, his Honor, Judge Rice, presiding, a verdict was rendered in favor of the plaintiff for $2,000 on the first cause of action and $2,000 on the second cause of action. On motion of the defendant, on the minutes, a new trial was granted on the grounds: (1) That, if the plaintiff was entitled to anything at all, she should have recovered more than the jury awarded; and (2) that if plaintiff's intestate came to his death by the wound on his hand as alleged in the complaint, as a proximate cause, the great preponderance of the evidence shows that the wound was the result of his sole negligence, for which no recovery should be had.

The third trial of the case took place April 2-6, 1918, his Honor, Judge Bowman, presiding. The verdict was rendered in favor of the plaintiff for $5,500 on the first cause of action and $2,500 on the second cause of action.

A great deal of testimony was offered for and against the issues raised by the pleadings in both causes of action. These issues and the pleadings are set out in the charge to the jury. At the close of the testimony a motion made by the defendant for a directed verdict was overruled.

The charge to the jury follows:

Mr. Foreman and Gentlemen of the Jury: This is the case of Mrs. Mary E. Strickland, administratrix of the estate of Henry B. Strickland, deceased, plaintiff, against the Southern Railway Company, defendant. This action is brought by this plaintiff under what is known as the Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St., secs. 8657-8665]), for the benefit of herself and her children for damages on account of the death of her husband, which she says was caused by the defendant; the action being brought for the benefit of herself and her children under the Federal statute. This is an act of the Congress of the United States, it is the Federal law, but under the provisions of the Federal law, it is enforced in the Courts of this State.

It is alleged here that the plaintiff's husband, H. B. Strickland, was in the employment of the Southern Railway Company as an engineer. And she says in her complaint that the defendant railway is a corporation; that the plaintiff is a resident of the State of South Carolina—and when I say defendant, I mean the Southern Railway Company, and that her intestate, H. B. Strickland, at the time he received his injury which caused his death, was discharging his duties as an 'interstate employee, that is, employed by a railroad that runs from one State to another or through two or more States, and engaged in interstate commerce, and that the defendant railway company at the said time was engaged

in interstate commerce and traffic and running between Columbia, S. C., and Jacksonville, Fla. And that on the 28th of March, 1916, the plaintiff was appointed by the probate Court as administratrix of her husband's estate. That Henry B. Strickland, late of the city of Savannah, Ga., came to his death at the time in the manner hereinafter mentioned and died on the 4th of September, 1914, leaving as his heirs at law his wife, Mrs. Mary E. Strickland, and his two daughters, as is set out in the complaint. And this action is brought both for the benefit of herself and her said children under an act of Congress, passed April 22, 1908, and the amendments thereto known as the Federal Liability Act.

That is what she alleges. Now, when you come into Court you have to give a written statement stating what you allege, and that is what she says in writing as to what she claims: That the said Mrs. Mary E. Strickland and her two daughters aforesaid were dependent on the said H. B. Strickland, deceased, for their support, maintenance, care, and advice, etc. She alleges that on the 4th day of July, 1914, the plaintiff's intestate, H. B. Strickland, was, and had been for a number of years prior thereto, in the employment of the Southern Railway as a locomotive engineer on its passenger trains, and was on the 4th day of July, 1914, in charge as an engineer aforesaid of a certain passenger train of the defendant, known and designated as train No. 123, going south, that is from Savannah to Jacksonville, and No. 124 coming north, that is from Jacksonville to Savannah, and which was scheduled and did leave Savannah, Ga., on the morning of the 4th of July, 1914, at about 4:20 a. m., and which was scheduled to arrive at Jacksonville, Fla., about 8:30 a. m. the same day on its return trip to Savannah, Ga. That the said train and engine on which plaintiff's intestate was in charge of as engineer on the morning of July 4, 1914, was equipped with a reservoir and drain cock on each side of the engine and was a part of the

system of air brakes attached to said engine and train.   That the plaintiff's intestate on arriving at the city of Jacksonville, Fla., on the morning of July 4, 1914, while in the discharge of his duty as engineer, examined the said engine, appurtenances, and appliances for the purpose of ascertaining whether the same were in a condition to make a return trip to the city of Savannah, Ga., that afternoon, pulling train known as No. 124 coming north from Jacksonville, Fla., to Savannah, Ga., operated and owned by the said defendant.   That while engaged in said examination he opened one of the drain cocks connected with one of the said reservoirs for the purpose of draining the said reservoir and to see if it was in proper working order, and, finding that the same would not drain, he ran a wire up into the said drain cock and reservoir to ascertain the reason why it would not drain, as was the duty and custom of engineers to do under the circumstances.   As he ran the said wire up the said drain cock and reservoir, the air, dirt, oil, iron rust, sediment, and water which had accumulated therein came out with great violence, striking the back of his right hand, the iron rust, dirt, oil, and sediment penetrating therein, causing the same to bleed, and making a serious and painful wound, and thereby causing blood poison and acute nephritis, from the effects of which he died on the 4th day of September, 1914.   Then the complaint goes on and says that it was the duty of the defendant to furnish him with reasonably safe and suitable appliances, to inspect and keep the same in reasonably safe and suitable condition for the conduct of the work in which he was engaged as said engineer.   Then in violation of such duty the defendant carelessly and negligently failed to properly inspect and to keep in a reasonably safe and suitable condition the reservoir and drain cock by allowing the same to rust and corrode, and allowing the said iron rust, dirt, oil, sediment, and water to accumulate in said reservoir and drain cock, thereby causing the injury to the plaintiff's intestate, resulting in his

death, the said careless and negligent acts of the defendant being the direct and proximate cause of his injury and death on the 4th day of September, 1914.

And further, that the defendant, Southern Railway Company, its agents, servants and employees, were careless and negligent in permitting the said reservoir and drain cock attached to and a part of the air brakes, to become out of repair; that the defendant, Southern Railway Company, its agents, servants, and employees, were careless and negligent in permitting the said reservoir to become clogged with iron rust, dirt, oil, sediment, and water to such an extent that the safety valve and inlet for air ceased to perform their necessary functions, thereby causing the necessity to attempt to open up the same.

That the defendant, Southern Railway Company, its agents, servants, and employees, were careless and negligent in allowing the inside of the said reservoir to become corroded with iron rust and stopped up with dirt, oil, sediment, and water, and in failing to clean the same. That the defendant, Southern Railway Company, its agents, servants, and employees, were careless and negligent in failing to properly inspect the said appliances, so that the clogging of the said reservoir and drain cock might have been discovered and removed by a suitable cleaning. That the defendant, Southern Railway Company, was careless and negligent in not furnishing a reasonably safe air brakes system, and in not having the same properly inspectel.

Now, it goes on and says that the defendant, Southern Railway Company, was careless and negligent in not having in its employ a proper person stationed at Savannah, Ga., to inspect, test, and repair its said air brakes, reservoirs, and drain cocks, more especially the air brakes, reservoirs, and drain cocks on the said engine and trains in charge of plaintiff's intestate on the day that he was injured.

That the said air brakes, reservoirs, and drain cocks, which were a part of the said air brakes system, were out

of repair and in an unsafe condition, and had not been prop-
erly tested or inspected by competent, skillful, and efficient
engineers and inspectors. · That a proper inspection and test-
ing thereof by competent, efficient and skillful engineers and
inspectors would have disclosed that the said reservoir and
the parts thereof hereinbefore mentioned had become cor-
roded with iron rust and stopped up with dirt, oil, sediment,
and water, and was not in a condition reasonably safe to be
used and operated, and would have disclosed the defective
condition thereof hereinbefore mentioned, and that said air
brakes, reservoirs, and drain cocks were not properly cared
for or kept in repair, and was operated after the same
became out of repair and defective, in that the reservoir had
become corroded with iron rust and stopped up with dirt,
oil, sediment, and water, which defects aforementioned were
at and before the time aforesaid well known to the defend-
ant, or, if not, should have been in the exercise of due and
proper care on his part.

That on account of the negligence and carelessness of the
defendant, its agents, servants, and employees as herein-
above alleged, the plaintiff's intestate was wounded, bruised
and killed, and she and her children have suffered great
pecuniary loss, and the children have been deprived of the
care, advice, and education by the father to their grievous
injury, and the plaintiff and the children of the plaintiff's
intestate have been damaged in the sum of $50,000.

Now, before I read the next cause of action, I will call
your attention to this fact: If the railroad in the manage-
ment of its business was in no wise guilty of negligence or
carelessness, but ran its railroad business in the same man-
ner in which a reasonably well regulated company and a
carefully well regulated company did run its business, and
even though this man got hurt, if the railroad was in no way
guilty of carelessness or negligence, then they could not
recover from the railroad, and they can only recover on the
particular of negligence and carelessness mentioned in the

complaint, and that is why I read all of the particular grounds of negligence, because if they were negligent in any other particular, and that caused his injury, they could not recover, but if the negligence mentioned here was the cause of the trouble, and they suffered damages on account of that negligence and carelessness, then they could recover such an amount as you see fit.

The second cause of action alleges the same thing as the first, except that it says that, from the time Mr. Strickland was hurt until he died, he suffered a great deal of physical pain and suffering, and that his estate is entitled to recover for such pain as he suffered from the time of his injury until his death. Now, gentlemen, that is the complaint.

The defendants come in with their answer, and they deny all of the material allegations, and they allege that if this man received injury, that he received it as a result of his own negligence, and they say if he did receive it it was from his own negligence and that his own negligence contributed to the injury that he has received, and they say that he had assumed the risks incident to his occupation when he entered into that calling or occupation, that is as of engineer, that he assumed the risks ordinarily incident to such a calling, and that is one of the defenses they set up; they deny that the injury caused his death; they deny that he died from an injury they allege to have received here; they deny that at the time of his injury that he was in the discharge of his duties as an engineer, if he was injured at all, that at the time he received them he was not in the discharge of his duties as engineer.

Now, gentlemen, this action is brought under the Federal Employers' Liability Act. If they can prove by the preponderance or greater weight of the evidence that the plaintiff's intestate in this case died from the careless act and negligence of the railway company, and that was the proximate cause of his death, then they would have a right to recover from the railroad company such an amount as you

would see fit to give; such an amount as they would have received from Mr. Strickland in case he had lived; such assistance as they would have received from him if he had lived, not what he would have made, but such as he would have given to them. If a man makes so much money a month, he has to use some on himself or other persons, but this is to compensate them for such an amount as he would have given for their education and support and rearing and everything they would have gotten from him; that is to compensate them for what they lost, if they lost anything by killing him, if it was done through the negligence and carelessness of the railroad. Now, did this man die from the accident or injury he received on that railroad? If he did not, if he died from some other cause altogether, why the railroad is in no way responsible. So you will make your inquiry first, and say did he die from the injury that he received, or did he die from this injury on his hand at all?

They allege that he received an injury on his hand; did he die from that? If not, that ends the whole thing. That is all you have to do, but if you find that he did die from that, and that the railway company was responsible on account of its acts of carelessness and negligence for that injury on his hand, and that that injury produced the other disease that they say he had, blood poisoning, and that that blood poison produced acute nephritis, if it produced that, and if it did, and that was the proximate cause of his death in that particular, if so, they would be responsible for such damages as was sustained; that is, if their negligence caused it, they would be liable, but if they were in no way guilty of carelessness and negligence, even if he received that injury, if they were not guilty of negligence and carelessness, the plaintiff cannot recover. They are only entitled to recover in case the railroad failed to act as a reasonably well regulated road should act, and if on account of its carelessness and negligence that injury resulted and resulted as a proximate cause of it and without which it would not have hap-

pened.   There is a rule which requires that the master shall furnish their servants or employees a reasonably safe place in which to work and also to furnish them with reasonably safe and suitable appliances with which to work.   That is the duty of the master, and then, after that has been furnished by the master, it is the duty of the servant to use due care in carrying on his work and conduct of himself.

When a man is employed in any undertaking, he assumes the risks, all the risks that are incident to that undertaking; if you hire a man to work in your machine shop, that is more or less hazardous, and when a man comes in there to work he assumes the risks ordinarily incident to that kind of business, and if he gets hurt by some risk ordinarily incident and connected with that, some of the risks that are ordinarily incident to it, then he could not recover.   But if there was some extraordinary risks and some he did not know about and his attention was not called to it, then he would have the right to recover, and if he sees the dangers there the extraordinary risks, or if it has been called to his attention by the master that it must be stopped, and if the master promises to remedy it, he can serve for a reasonable time for the master to remedy it, but, if he does not remedy that in a reasonable time, it is his business to quit, or he assumes the risks of that. That is what I understand is the assumption of risks.

Now, there is another defense, that of contributory negligence.   In a case of this kind in the State Courts, contributory negligence will defeat the right of the plaintiff to recover, but in this case it will not do that.   If there was an injury caused through the carelessness and negligence of the defendant and the carelessness of the plaintiff operated together and contributed as a direct and proximate cause towards that injury, then you should find out what proportion of that injury was caused by the carelessness of the plaintiff and what proportion was caused by the negligence of the defendant; you will fix the amount whatever it is, and if you find a smaller proportion of it was caused by the care-

lessness of the plaintiff, take that portion off from the amount and give him the other portion of it that would be left if it was caused by the carelessness and negligence of the defendant. I think that is the rule under the Federal Employers' Liability Act.

Now, as to contributory negligence, it might be well for me to give you an illustration, because I might make it plainer. It is in proportion to the injury that was caused by the negligence one to the other, then you arrive at that portion that was caused by the negligence of the plaintiff, and give the plaintiff against the defendant such an amount as his carelessness was the cause of.

Now, gentlemen, is there anything else?

Mr. Melton: On the question of assumption of risks, we would like to have your Honor charge, as to the assumption of risks, that the employee does not assume any of the duties that the master is required to do.

The Court: When a man works that way, he does not assume any risks of the master; the master is presumed to use due care. Is that it?

Mr. Melton: Yes, sir; your Honor.

Mr. Efird: He does not assume it in a case of this kind. Under the Federal Employers' Liability Act he does not assume any carelessness or negligence or failure on the part of the master to keep his appliances in proper condition.

The Court: That is good law. The servant does not assume any carelessness or negligence on the part of the master in keeping his appliances in good condition, and the rule is, under the law, they are required to supply these safety appliances. If the railroad company is careless in furnishing or fails to furnish the safe appliances, which is required under the act, the question of the assumption of risks does not arise on the part of the plaintiff, nor does the other arise if they are kept in proper repair; they do not run the risk of that at all.

Mr. Timmerman·: Now, take the rule conversely: That where a master' employs a servant and tells him what to do, and he undertakes to go outside of that employment and fools with machinery that is dangerous when he is told not to do it, then the master assumes no responsibility.

The Court: If the master has directed him to do the work and directed him to do it in a safe way, and he does it in some other way, in violation of the instructions of the master, the master is not responsible for it.

Mr. Evans: That is good law.

The Court: On behalf of the plaintiff, I am requested to charge you certain propositions of law, all of which I charge. They are very long, but I cannot help that.

Plaintiff's Requests: 1. I charge you that this action is brought under the act known as the Federal Employers' Liability Act of 1908, and amendments thereto, passed by Congress of the United States, which supersedes and does away with all State laws on the subject; and the issues in this case are to be determined in the light of the said act, and the amendments thereto, as it is the law governing this case.   This is an action to recover damages for the alleged wrongful death of the intestate and conscious pain suffered by him between the time of his injury and his death.

The plaintiff herein has brought this action for the loss suffered by herself and children by reason of the alleged wrongful death of the intestate, and as a consequence of his conscious pain and suffering, if any, between the time of injury and his death.

It is alleged in the complaint that the intestate at the time of his injury was engaged in interstate commerce as an employee of the ·defendant, and that at the said time the defendant was also engaged in interstate commerce; that while so employed he was injured and killed by and through the negligence of the defendant, its agents, servants and employees; that from the time of his injury to his death he endured conscious pain and suffering; that the plaintiff and

her children have suffered actual pecuniary loss; and that the children have been deprived of the care, advice, and education by the father to their grievous injury, etc.

2. I charge you the Federal Employers' Liability Act of April 22, 1908, and the amendment of April 5, 1910 (36 Stat. 291, c. 143, sec. 2), adding section .9 thereto (U. S. Comp. St., sec. 8665), declares two distinct and independent liabilities resting, of course, upon the common foundation, of a wrongful injury, but based upon altogether different principles. The act is one which relates to the liability of railroad companies, engaged in interstate commerce to their employees, while engaged in such commerce. It plainly declares the liability of the carrier to its injured servant. If he had survived he might have recovered such damages as would have compensated him for his expense, loss of time, suffering and diminished earning power. But if he does not live to recover upon his own cause of action, what then? Does any right of action survive his death and pass to his representatives? This is a question which depends upon the statute.

By this act, Congress has undertaken to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of a power, which is granted in express terms, must supersede all legislation over the same subject by the States.

The obvious purpose of Congress was to save a right of action to certain relatives dependent upon an employee wrongfully injured, for the loss and damage resulting to them financially by reason of the wrongful death. Thus, after declaring the liability of the employer to the injured servant, it adds: "Or in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee, for

such injury or death," etc. There is no express or implied limitation of the liability to cases in which the death was instantaneous.

3. I charge you this cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury, if he had survived. It is one beyond that which the decedent had, one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is, therefore, a liability for the pecuniary damage resulting to them, and for that only.

A "pecuniary" loss or damage must be one which can be measured by some standard. It is a term employed judicially, "not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation and that inestimable loss of the society and companionship of the deceased relative upon which in the nature of things, it is not possible to set a pecuniary valuation."

Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and when the beneficiary is a child, for the loss of that care, counsel, training and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation.

The word "pecuniary" was used in distinction to those injuries to the affection and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of value,

4. I charge you no hard and fast rule by which pecuniary damages may in all cases be measured is possible. The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, "according as the action is brought for the benefit of husband, wife, minor child, or parent of minor child, for the loss of services or support of which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled."

A minor child sustains a loss from the death of a parent and particularly of a mother, altogether different from that of a wife, or husband from the death of the spouse. The loss of society and companionship, and of the acts of kindness which originate in the relation and are not in the nature of services, are not capable of being measured by any material standard. But the duty of the mother to minor children is that of nurture, and of intellectual, moral, and physical training, such as, when obtained from others, must be for financial compensation. In such a case it has been held that the deprivation is such as to admit of definite valuation, if there be evidence of the fitness of the parent, and that the child has been actually deprived of such advantages.

5. I charge you that, where the persons suffering injury are the dependent widow and infant children of a deceased husband and father, the jury will also take into consideration the care, attention, instruction, training, advice and guidance, which one of decedent's disposition, character, habits, intelligence, and devotion to his parental duties, or indifference thereto, as shown by the evidence, would reasonably be expected to give to his infant children during their minority, and the pecuniary benefit therefrom to said children, and include the pecuniary value of the same in the damage assessed.

Under the Employers' Liability Act, where death is instantaneous, the beneficiaries can recover their pecuniary

loss and nothing more, but the relationship between them and the deceased is a proper circumstance for consideration in computing the same. The elements which make up the total damage resulting to a minor child from a parent's death may be materially different from those demanding examination where the beneficiary is a spouse or collateral dependent relative; but in every instance the award must be based upon money value, the amount of which can be ascertained only upon a view of the peculiar facts presented.

6. I charge you the original act was adopted by Congress April 22, 1908. In its first section it provides for two distinct rights of action based upon altogether different principles although primarily resting upon the same wrongful act of neglect. It invests the injured employee with a right to such damages as will compensate him for his personal loss and suffering, a right which arises only where his injuries are not immediately fatal. And where his injuries prove fatal, either immediately or subsequently, it invests his personal representative, as a trustee for designated relatives, with a right to such damages as will compensate the latter for any pecuniary loss which they sustain by the death. At first there was no provision for a survival of the right given to the injured person, and so, under the operation of the rule of the common law, it would die with him.

This cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury, if he had survived. It is one beyond that which the decedent had—one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is, therefore, a liability for the pecuniary damage resulting to them, and for that only. The cause of action which was created in behalf of the injured employee did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employee from his injury, creates a new and distinct right

of action for the benefit of the dependent relatives named
in the statute.   The damages recoverable are limited to such
loss as results to them because they have been deprived of a
reasonable expectation of pecuniary benefits by the wrong
ful death of the injured employee.   The damage is limited
strictly to the financial loss thus sustained.  ·

7. I charge you, if the matter turned upon the original act
alone, it is plain that the recovery here could not include
damages for the decedent's pain and suffering, for only
through a provision for a survival of his right could such
damages be recovered after his death.   But the original act
is not alone to be considered.   On April 5, 1910, prior to
the decedent's injuries, the act was "amended, by adding the
following section :

"Sec. 9. Any right of action given by this act to a person
suffering injury shall survive to his or her personal repre-
sentative, for the benefit of the surviving widow or husband
and children of such employee, and, if none, then of such
employee's parents; and, if none, then of the next of kin
dependent upon such employee, but in such cases there shall
be only one recovery for the same injury."

No change was made in section 1 (U. S. Comp. St., sec.
8657).   It continues, as before, to provide for two distinct
rights of action; one in the injured person for his personal
loss and suffering, where the injuries are not immediately
fatal, and the other in his personal representative for the
pecuniary loss sustained by designated relatives where the
injuries immediately or ultimately result in death.   With-
out abrogating or curtailing either right, the new section
provides in exact words that the right given to the injured
person "shall survive" to his personal representatives "for
the benefit of" the same relatives in whose behalf the other
right is given.   Brought into the act by way of amendment,
this provision expresses the deliberate will of Congress.
Its terms are direct, evidently carefully chosen, and should
be given effect accordingly.   It does not mean that the

injured person's right shall survive to his personal represen-
tative and yet be unenforceable by the latter, or that the
survival shall be for the benefit of the designated relative,
and yet be of no avail to them.   On the contrary, it means
that the right existing in the injured person at his death, a
right covering his loss and suffering while he lived, but tak-
ing no account of his premature death or of what he would
have earned or accomplished in the natural span of life,
shall survive to his personal representative to the end, that
it may be enforced and the proceeds paid to the relative
indicated.   And when this provision and section 1 are read
together, the conclusion is unavoidable that the personal
representative is to recover on behalf of the designated
beneficiaries, not only such damages as will compensate them
for their own pecuniary loss, but also such damages as will
be reasonably compensatory for the loss and suffering of the
injured person while he lived.   Although originating in the
same wrongful act or neglect, the two claims are quite dis-
tinct; no part of either being embraced in the other.   One
is for the wrong to the injured person, and is confined to his
personal loss and suffering before he died; while the other is
for the wrong to the beneficiaries, and is confined to their
pecuniary loss through his death.   One begins where the
other ends, and a recovery upon both in the same action is
not double recovery for a single wrong, but a single recovery
for a double wrong, if the evidence in this case justifies such
a conclusion.

8. I charge you if you find from a preponderance of the
evidence that while Mr. Strickland lived, from the time of
the accident to his death, he endured conscious pain and suf-
fering, if any, as the result of his injuries, you will award
such damages as may have been sustained by the deceased
for the pain and suffering, which amount is to be recovered
by the administratrix along with the actual damages for the
mother and children, if you find that they suffered any, for

there can be but one recovery for damages for both.    Judge: "I amend that and charge you, 'provided that resulted from the negligence and carelessness of the railroad company.'"

Contributory Negligence and Assumption of Risk. 9. By the first section of the Federal Employers' Liability Act, the right of action is conferred (under conditions specified) for injury or death of the employee, "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

This clause has two branches; one covering the negligence of any of the officers, agents, or employees of the carrier, which has the effect of abolishing, in this class of cases, the common law rule that exempted the employer from responsibility for the negligence of a fellow employee of the plaintiff, and the other relating to defects and insufficiencies in the cars, engines, appliances, etc., but plainly with respect to the latter, as well as to the former ground of liability, it was the intention of Congress to base the act upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. The common law rule is that an employer is not a guarantor of the safety of the place of the work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen.    To hold that under the statute a railroad company is liable for the injury or death of any employee, resulting from any defect or insufficiency in its cars, engines, appliances, etc., however caused, is to take from the act the words, "due to its negligence."    The plain effect of these words is to condition the liability upon negligence; and, had

there been doubt before as to the common law rule, certainly the act now limits the responsibility of the company as indicated.

10. By section 3 of the Federal act of 1908 (U. S. Comp. St., sec. 8659), it is declared that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." And by section 4 of the act (section 8660), "such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

By the phrase, "any statute enacted for the safety of the employee," Congress evidently intended Federal statutes, such as the Safety Appliance Act (U. S. Comp. St., sec. 8605, *et seq.*).

Section 4 of the Employers' Liability Act, in eliminating the defense of assumption of risk in the case indicated, quite plainly evidences the legaslative intent that in all other cases such assumption shall have its former effect as a complete bar to the action, and, taking sections 3 and 4 together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employee, there is, with respect to cases not in this category, limitation upon the effect that is

to be given to contributory negligence while no corresponding limitation is imposed upon the defense of assumption of risk.

11. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take same precaution for his own safety when engaged in a hazardous occupation, "contributory negligence" is sometimes defined as a failure to use such care for his safety as ordinarly prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risk may be present notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workmen—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work, and suitable and safe appliances for the work. These the employee is not treated as assuming, until he becomes aware of the defects or disrepair, and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciate them.

When an employee does know of the defect and appreciates the risk that is attributable to it, then, if he continues in the employment without objection or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If,

however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk, unless at least the danger be so imminent that no ordinarily prudent man, under the circumstances, would rely upon such promise.

12. You are instructed that, by accepting employment as an engineer with the defendant, the plaintiff's husband assumed the risk of such dangers as are ordinarily incident to the occupation he was engaged in, and, if you find that his injury was occasioned by one of the incidents ordinarily attending the occupation upon which he was engaged, you should return a verdict for the defendant; but you are instructed in this connection that the plaintiff's husband only assumed the risks that are ordinarily incident to the occupation in which he was engaged, and that he did assume the risks that were attendant upon the negligence of a fellow servant.

13. I charge you while an employee assumes the risk and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer, or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work), and is not to be treated as assuming a risk that is attributable to the employer's negligence, until he becomes aware of it, or it is so plainly observable that he must be presumed to have known it. The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence.

14. I charge you: "The true test is, not in the exercise of ordinary care to discover dangers by the employee, but

whether the defect is known or plainly observable by him. An employee is not charged by law with the assumption of a risk arising out of defective appliances, provided by his employer, unless his employment was of such a nature as to bring to his attention, and cause him to realize and comprehend the dangers incident to the use of such appliances."

15. I charge you: "An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly obvious that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of risk, applicable to a defect due to the employer's negligence, it must appear, not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it."

16. I charge you that it is alleged in the complaint that plaintiff's intestate, while examining the engine on which he had been running, opened one of the drain cocks on one of the main air reservoir, to see if it was in proper working order, to ascertain the reason why it would not drain, and that while so doing, the air, dirt, oil, iron rust, sediment, and water, which had accumulated therein, came out with great violence, striking the back of his right hand, causing the same to bleed and making a painful and serious wound, and thereby causing blood poison and acute nephritis, from the effects of which he died on the 4th day of September, 1914. You will, therefore, first consider the evidence in the case, in

order to ascertain whether he did come to his death in the manner and under the circumstances alleged in the complaint, and if you find from the evidence that he did come to his death under such circumstances, by reason of the careless- ness and negligence of the defendant, its agents and serv- ants, as alleged in the complaint, then you may go further and consider the other allegations of the complaint under the law as I have hereinbefore charged you.

17. I charge you: "The fact that an employee may have been guilty of contributory negligence shall not bar a recov- ery, but the damages shall be diminished by the jury in pro- portion to the amount of negligence attributable to such employee. It means, and can only mean, and the Supreme Court of the United States has held, that where the causal negligence is attributable partly to the carrier and partly to the injured employee, he shall not recover full damages, but only a diminished sum bearing the same relations to the full damages that the negligence attributable to the carrier bears to the negligence attributable to both, the purpose being to exclude from the recovery a proportionable amount of the damages corresponding to the employee's contribution to the total negligence. So if you find the plaintiff was injured through the concurring negligence of the company and him- self, you will apply the above rule."

The defendant has requested me to charge you certain requests, which I do (all of the defendant's requests were charged as written):

Defendant's Requests: (1) The jury are instructed that, in order to recover, the burden is on the plaintiff to show by a preponderance of the evidence, not only that the appli- ances alleged to have been defective were defective, but that the defect was the proximate cause of the injury com- plained of.

(2) A workman of mature years is taken to assume the ordinary risks incident to his occupation, and the jury are charged that, if the preponderance of the evidence shows

that the injury complained of was not due to the failure of the defendant railway company to comply with the requirements of any Federal statute for the safety of employees, and if it further shows that at the time of the alleged injury H. B. Strickland was performing an act that it was the duty and custom of engineers to do under the circumstances, and the risk of performing which he had assumed as part of his employment, the plaintiff is not entitled to recover.

(3) The jury are instructed that, if the preponderance of the evidence shows that the injury complained of was not caused by defective appliances, as alleged in the complaint, but that the negligence of H. B. Strickland in performing an act that it was the duty and custom of engineers to do, under the circumstances, was the proximate cause of the injury the plaintiff is not entitled to recover.

(4) The jury are charged that, if the preponderance of the evidence shows that the negligence of the defendant railway company, and not its failure to comply with any requirements of the Federal statute, was a proximate cause of the injury complained of, but that the negligence of H. B. Strickland, in performing an act that it was the duty and custom of engineers to do under the circumstances, was also a proximate cause of the injury, the plaintiff is not entitled to recover full damages, but only a diminished sum bearing the same relation to the full damages that the negligence attributable to the defendant bears to the negligence attributable to both the defendant and H. B. Strickland.

(5) The jury are instructed that, if they find from the preponderance of the evidence that H. B. Strickland was not injured while in the performance of his duty, as alleged in the complaint, but that his negligence in performing an act outside the requirements of his duty was the proximate cause of his injury, the plaintiff is not entitled to recover.

(6) The jury are instructed that the plaintiff is not entitled to recover for any suffering of H. B. Strickland, unless the preponderance of the evidence shows that the appliances

described in the complaint were defective, as therein alleged, and this defect was the proximate cause of his injury.

(7) The jury are instructed that the plaintiff is not entitled to recover on account of the death of H. B. Strickland, unless the preponderance of the evidence shows that the defect in appliances, described in the complaint, was the proximate cause of the injury to his hand, that the injury to his hand produced blood poisoning, and acute nephritis, and that acute nephritis caused his death.

(8) The jury are charged that, if they find that H. B. Strickland was survived by his widow and two infant daughters, who were dependent upon him, as alleged in the complaint, the burden rests upon the plaintiff to show how much he contributed to the support and maintenance of his wife and said children, and the plaintiff can only recover in this case, if she is entitled to recover at all, the amount she has shown by the greater weight of the evidence that she and her children have been deprived of by the death of her husband.

(9) The jury are instructed that, if they find that the plaintiff is entitled to recover at all for the death of H. B. Strickland, the amount of damages should be equivalent to compensation for being deprived of the reasonable expectation of pecuniary benefits that would have resulted to his wife and his said infant children from the continued life of the said H. B. Strickland. As a given sum of money in hand is worth more than a like sum of money payable in the future, and as interest may safely be earned upon any amount that is awarded, the ascertained future benefits must be discounted by the jury in making up the award, so that adequate allowance may be made for the earning power of money.

(10) The mortuary table that has been introduced by the plaintiff to show the expectancy of H. B. Strickland is not to be taken by the jury as absolutely binding and conclusive, but the jury are to use their common sense and take the mortuary table in connection with other circumstances, such

as the health of H. B. Strickland and their common experience as to whether a man's earning capacity as an engineer will increase or decrease after he is 46 years old.

Now, gentlemen (referring to the requests to charge), I charge you everything in there.

Now, from that mortuary table, you can take that and look at that and see what is the ordinary expectancy, as to how long probably a man will live. Take a man as old as I am. It shows how long probably I will live; but it does not mean that I will live that long, but you can take it and consider it.

Mr. Evans: That next to the last request of the defendant (9) is sound law, but it is only as to the pecuniary loss to the family.

The Court: That is under the first cause of action. Now under the second cause of action I charge you that you can give such an amount as will compensate them for the conscious pain and suffering of the deceased from the time of his injury until the time of his death.

Mr. Evans: That is, if they find that the company was negligent.

The Court: Yes, sir; if their negligence was the proximate cause, without which it would not have happened; if the railroad was negligent, and that did not cause his death, then they cannot recover.

Mr. Timmerman: We would like to have your Honor charge the jury this: That when a railroad company furnishes its employees the best appliances obtainable, that the law requires no more than that.

The Court: It does not require that much. Only reasonably safe. When a railroad company furnishes its employees with reasonably safe appliances, they are required to do no more; if it furnishes the best, they cannot object.

Mr. Evans: We only want it reasonable—.

The Court: I am going to charge that.

Now, gentlemen (addressing the attorneys), is that all? Have I overlooked anything? I might have overlooked something. If not, I will charge on the preponderance of the evidence.

Mr. Evans: Nothing further from our side.

The Court: Gentlemen of the jury, the plaintiff, in a case like this, has to make out her case by the preponderance or greater weight of the testimony. That does not mean (and I am almost ashamed to mention it, but some people make such mistakes on that), that does not mean the greater number of witnesses put up. I have seen a child testify in a case against a dozen people and win the case. It is the amount of conviction that is produced on your minds. You take all the testimony for the plaintiff and all the testimony for the defendant and put it in an imaginary scale or balance. Then if the testimony of the defendant outweighs, then the plaintiff has failed to make out her case, because she must make it out by the greater weight; but if the testimony for the plaintiff carries down the scales, then she is entitled to recover, and it is your business to ascertain whether she is entitled to recover.

There are two causes of action here; if you find for the plaintiff, you will say we find for the plaintiff so many dollars on the first cause of action, and so many dollars on the second cause of action, or we find for the defendant under the first cause of action or under the second cause of action, or we find for the plaintiff under one cause of action and not on the other, or we find for the defendant. If you find nothing at all for the plaintiff, just say, we find for the defendant, and, in either event, sign your name as foreman, and date it. Just write your verdict on this paper here, under agreement of counsel.

I regret very much to keep you all here late, but I know you had rather stay here and finish it to night than to come back tomorrow. I am going to come back tomorrow, too. I will be here for the next few minutes, and, if you find you

cannot come to a conclusion in a few minutes, call the sheriff and tell him to give you supper. When you have agreed, you can send for me, and I will come and receive your verdict.

Mr. Evans: I would like for your Honor to instruct the jury that what has taken place in either of the other two trials has nothing to do with this case now, as this case is now being tried anew.

The Court: I feel ashamed to tell you that, gentlemen. You ought to know that without being told, but I will tell you that you are trying this matter *de novo,* which means from beginning to end. You have nothing to do with what some other jury or Judge has done. You are here to find the truth.

The lawyers in this case have performed their duties nobly. They have not left anything undone. They have done their duty. Now we must do ours. You are the judges of the facts, and you are to take the law as I have given it to you. Whether I make a mistake or not, you are to take what I say as the law. The Supreme Court is there to correct me if I make a mistake, but if you make a mistake there is no tribunal to correct you. You are the sole judges of the facts; therefore, it is incumbent on you to find out what is right to be done.

The truth is what you are hunting for. You do not care which side wins, and I am indifferent as to which side wins; but we are vitally interested in getting at the truth, because that is what the word verdict means. Now, when it comes to the form of your verdict, if you cannot get the form straight, come in and we will help fix it. Ask for anything you want, any exhibits or testimony. If you are in doubt about any testimony, come in and I will have the stenographer read it to you. Write your verdict on the back of this paper here (indicating). You may retire.

The defendant made a motion for a new trial, which was refused. Due notice of appeal was served; the exceptions being as follows:

(1) It was error to charge the jury as follows: "Now, before I read the next cause of action, I will call your attention to this fact: If the railroad, in the management of its business, was in no wise guilty of negligence or carelessness, but ran its railroad business in the same manner in which a reasonable well regulated company and a careful, well regulated company did run its business, and even though this man got hurt, if the railroad was in no way guilty of carelessness or negligence, then they could not recover from the railroad, and they can only recover on the particular negligence nd carelessness mentioned in the complaint, and that is why I read all of the particular grounds of negligence, because, if they were negligent in any other particular, and that caused his injury, they could not recover, but if the negligence mentioned here was the cause of the trouble, and they suffered damages on account of that negligence, and carelessness, then they could recover such an amount as you see fit"—the point being that the trial Judge should have instructed the jury that the defendant is not liable unless its negligence was the proximate cause of the injury, instead of instructing them that it was not liable if it was in no wise guilty of negligence or carelessness.

(2) It was error to charge the jury as follows: "The servant does not assume any carelessness or negligence on the part of the master in keeping his appliances in good condition, and the rule is, under the law, they are required to supply these safety appliances; if the railroad company is careless in furnishing or fails to furnish the safe appliances, which is required under the act, the question of the assumption of risks does not arise on the part of the plaintiff, nor does the other arise if they are not kept in proper repair; they do not run the risk of that at all"—the point being that this paragraph of the charge was obscure and misleading,

this being especially true of the final clause, "they do not run the risk of that at all."

(3) It was error to charge the following paragraph of the plaintiff's fourth request: "A minor child sustains a loss from the death of a parent and particularly of a mother, altogether different from that of a wife, or husband from the death of the spouse. The loss of society and companionship, and of the acts of kindness which originate in the relation and are not in the nature of services, are not capable of being measured by any material standard. But the duty of the mother to minor children is that of nurture, and of intellectual, moral, and physical training, such as, when obtained from others, must be for financial compensation. In such a case it has been held that the deprivation is such as to admit of definite valuation, if there be evidence of the fitness of the parent, and that the child has been actually deprived of such advantages"—the point being that this is not an action for damages suffered by children on account of the loss of society and companionship of their mother.

(4) It was error to charge the plaintiff's twelfth request, as follows: "You are instructed that, by accepting employment as an engineer with the defendant, the plaintiff's husband assumed the risk of such damages as are ordinarily incident to the occupation he was engaged in, and if you find that his injury was occasioned by one of the incidents ordinarily attending the occupation upon which he was engaged, you should return a verdict for the defendant; but you are instructed in this connection that the plaintiff's husband only assumed the risks that are ordinarily incident to the occupation in which he was engaged, and that he did not assume the risks that were attendant upon the negligence of a fellow servant"—the point being that the trial Judge should have used the word "caused" and not the word "occasioned," and that in this request he did not clearly distinguish between negligence and assumption of risk.

(5) It was error to charge the following paragraph of the plaintiff's sixteenth request: "You will, therefore, first consider the evidence in the case, in order to ascertain whether he did come to his death in the manner and under the circumstances as alleged in the complaint, and if you find from the evidence that he did come to his death under such circumstances, by reason of the carelessness and negligence of the defendant, its agents and servants, as alleged in the complaint, then you may go further and consider the other allegations of the complaint under the law as I have hereinbefore charged you"—the point being that the use of the phrase "by reason of the carelessness and negligence of the defendant," did not make it clear that the defendant is not liable unless its negligence was the proximate cause of the injury, and that the jury must have been left in doubt by the concluding clause, "then you must go further and consider the other allegations of the complaint under the law as I have hereinbefore charged you."

(6) It was error to charge the plaintiff's requests, as submitted; the point being that they were so prolix, abstract, involved, and academic as to bewilder and confuse the jury; whereas, the purpose of the charge being to inform and aid the jury, the instructions should have been plain, concise, concrete, and definite.

(7) The charge to the jury, taken as a whole, was lengthy, involved, abstract and ambiguous, its inevitable effect being to bewilder and confuse the jury; whereas, the jury should have been aided by clear, concise, and definite instructions.

*Messrs. George B. Cromer* and *George B. Timmerman,* for appellant. *Mr. Cromer* submits: *The charge, taken as a whole, was so prolix, abstract, academic and ambiguous, as to bewilder and confuse the jury; whereas, the jury should have been aided by clear, concise and definite instruction:* Constitution, art. V, sec. 25; 14 R. C. L., p. 725, sec. 1;

14 R. C. L., sec. 38, p. 770; 14 R. C. L., p. 778, sec. 46; 14 R. C. L. 757, sec. 25; R. C. L., p. 782, sec. 49; 8 Ann. Cas. 436.

*Messrs. W. Boyd Evans, C. M. Efird, Porter A. McMaster, Melton & Sturkie, A. D. Martin, E. L. Asbill,* for respondent. *Mr. Evans* submits: *The trial Judge committed no reversible error when in his charge he used the word "mother" when he should have said "father."* 227 U. S. 59 (57 L. Ed., p. 417) ; 24 N. Y. 471; 11th Ont. App. Rep. 1; 235 U. S. 625 (59 L. Ed. 392). *"Caused" and "occasioned" mean substantially the same thing.* Standard Dictionary. *The trial Judge clearly distinguished, in his charge, between negligence, contributory negligence and assumption of risk:* 100 U. S. 213-217 (25 L. Ed. 612-615) ; 135 U. S. 554-570 (34 L. Ed. 235-241) ; 191 U. S. 64-67 (48 L. Ed. 96-100) ; 220 U. S. 590 (55 L. Ed. 596) ; 228 U. S. 319 (57 L. Ed. 852) ; 232 U. S. 94; 58 L. Ed. 1070; 226 U. S. 162-168; 57 L. Ed. 171-173; 170 U. S. 566-672 (42 L. Ed. 1196-1191) ; 60 L. Ed. 1105; 161 U. S. 451 (40 L. Ed. 766) ; 196 U. S. (49 L. Ed. 382).

December 30, 1918.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The facts are stated in the record, which together with the exceptions will be reported.

Exceptions numbered 1, 2, 3, 4 and 5 assign error on the part of his Honor, the presiding Judge, in charging the jury, as set forth in the portions of the charge therein quoted.

When the charge is considered in its entirety, it will be seen that the parts thereof, quoted in those exceptions, were not prejudicial to the rights of the appellant.

The other exceptions are too general for consideration.

Affirmed.